**United States District Court**
**District of Massachusetts**

```
                                    )
Prime Alliance Bank, Inc.,          )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )    Civil Action No.
Leasing Innovations, Inc.,          )    20-12107-NMG
                                    )
          Defendant.                )
                                    )
```

**MEMORANDUM & ORDER**

**Gorton, J.**

This action arises out of the leasing and financing of certain watermelon packaging equipment.  In April, 2018, defendant Leasing Innovations, Inc. ("Leasing Innovations" or "defendant"), an equipment financing company, assigned to plaintiff Prime Alliance Bank, Inc. ("Prime Alliance" or "plaintiff") a 75% interest in an equipment lease agreement ("the Lease Agreement") that Leasing Innovations had recently entered into with a customer, Quality Fresh Farms.  Quality Fresh Farms defaulted on the Lease Agreement later that year and filed for bankruptcy protection in January, 2019.

Prime Alliance alleges that Leasing Innovations intentionally misrepresented certain facts to induce it to agree to the assignment of the Lease Agreement and seeks, inter alia, rescission of that assignment and return of the approximately

-1-

$940,000 it paid to Leasing Innovations in consideration.
Defendant denies the allegations and assert several
counterclaims.

Pending before the Court are 1) the motion of Prime
Alliance for summary judgment as to certain elements of its
claim for fraud in the inducement and as to Leasing Innovations'
breach of contract counterclaim, and 2) the motion of Leasing
Innovations for summary judgment as to all Prime Alliance's
claims.

For the reasons that follow, defendant's motion (Docket No.
80) will be allowed and plaintiff's motion (Docket No. 77) will
be denied.

I.   **Background**

In February, 2018, Quality Fresh Farms, a grower, packer
and distributor of fresh produce, engaged Exeter Engineering
Inc. ("Exeter") to purchase watermelon packaging equipment.  It
hired Leasing Innovations to assist with financing that purchase
and, in March, 2018, Quality Fresh Farms and Leasing Innovations
entered the Lease Agreement.  Pursuant to that agreement,
Leasing Innovations was to purchase the watermelon packing
equipment from Exeter and lease it to Quality Fresh Farms.
Payment from Leasing Innovations to Exeter was to be made in
several installments, subject to the approval of Quality Fresh
Farms.  Quality Fresh Farms agreed, in turn, to make monthly

-2-

payments to Leasing Innovations in amounts ranging from $5,000 to $50,000, according to a set 60-month schedule.  The monthly payment varied to reflect the seasonal nature of the watermelon business.

Meanwhile, Leasing Innovations began to discuss an assignment of part or all of the Lease Agreement with plaintiff Prime Alliance, a bank with which it had a longstanding relationship.  In April, 2018, Brian Snider ("Snider"), a Leasing Innovations employee, sent a letter to Prime Alliance that included lease and funding documents.  Among those documents was a "Certified Copy of a Certificate of Delivery and Acceptance" ("the Certificate") executed by Quality Fresh Farms certifying that the watermelon packaging equipment had been "duly delivered in good order and duly inspected and accepted" by Quality Fresh Farms.  At the time, the equipment had not, however, been delivered to Quality Fresh Farms, accepted or inspected.  The parties dispute whether Leasing Innovations was aware that the equipment had not been delivered, accepted or inspected.

In any event, successful negotiations followed and, in late April, 2018, Prime Alliance and Leasing Innovations executed a "Limited Recourse Agreement" pursuant to which Leasing Innovations assigned to Prime Alliance a 75% interest in the Lease Agreement.  Prime Alliance paid Leasing Innovations

approximately $940,000 in consideration for the assignment.  At
around the same time, the parties entered a "Servicing
Agreement" which provided that Leasing Innovations would service
the Lease Agreement and collect monthly payments from Quality
Fresh Farms.

For several months, Quality Fresh Farms made payments to
Leasing Innovations in accordance with the Lease Agreement and
Leasing Innovations, in turn, remitted 75% of that amount to
Prime Alliance.  In July, 2018, however, things began to sour.
Quality Fresh Farms made the scheduled monthly payment to
Leasing Innovations (which forwarded 75% thereof to Prime
Alliance) but most of that payment and all of the August, 2018
payment were subsequently rejected by Quality Fresh Farms' bank
due to insufficient funds.  Around the same time, Quality Fresh
Farms became concerned that the watermelon packaging equipment
was not functioning properly and withheld its approval from
Leasing Innovations to make payments to Exeter for the
equipment.  Leasing Innovations, accordingly, did not pay Exeter
invoices dated July and August, 2018.

The financial condition of Quality Fresh Farms did not
improve in the subsequent months, and, in January, 2019, it
filed for bankruptcy protection in the Eastern District of
California.

In July, 2019, Prime Alliance sued Leasing Innovations in Utah state court, asserting a single count of breach of contract.  It later amended its complaint to add causes of action for fraudulent inducement and declaratory judgment.

Leasing Innovations removed the action to the United States District Court for the District of Utah, and, in November, 2020, that Court allowed defendant's motion to transfer the case to the District of Massachusetts in light of a forum selection clause in the Servicing Agreement. See Prime Alliance Bank, Inc. v. Leasing Innovations, Inc., No. 19-cv-00142-DBB, 2020 U.S. Dist. LEXIS 217039 (D. Utah Nov. 19, 2020).  After transfer, Prime Alliance filed a second amended complaint which includes claims for fraudulent inducement (Count I), breach of assignment (Count II), declaratory relief in the form of an accounting (Count III) and violation of M.G.L. c. 93A (Count IV).  Prime Alliance has since voluntarily dismissed Count IV and does not oppose a pending motion for summary judgment on Count III.

Leasing Innovations timely answered the second amended complaint and asserted counterclaims for breach of contract, unjust enrichment and violation of M.G.L. c. 93A.  It has since voluntarily dismissed its M.G.L. c. 93A claim.

In February, 2021, the parties filed the pending motions for summary judgment.

## II.  <u>Motions for Summary Judgment</u>

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is

-6-

appropriate if, after viewing the record in the non-moving
party's favor, the Court determines that no genuine issue of
material fact exists and that the moving party is entitled to
judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Application

#### 1. Fraud in the Inducement

Prime Alliance asserts that Leasing Innovations
fraudulently induced it to enter the Limited Recourse Agreement.
To prevail on a claim for fraud in the inducement under
Massachusetts law, the plaintiff must prove that

> (1) the defendant made a misrepresentation of fact;
> (2) it was made with the intention to induce another
> to act upon it; (3) it was made with knowledge of its
> untruth; (4) it was intended that it be acted upon,
> and that it was in fact acted upon; and (5) damages
> directly resulted therefrom.

Smith v. Zipcar, Inc., 125 F. Supp. 3d 340, 344 (D. Mass. 2015)
(quoting Equip. & Sys. For Indus., Inc. v. Northmeadows Constr.
Co., Inc., 798 N.E.2d 571, 574 (Mass. App. Ct. 2003)); see also
Berwind Prop. Group Inc. v. Envtl. Mgmt. Group, Inc., No. 04-
11411, 2007 U.S. Dist. LEXIS 96048 at *9 (D. Mass. Feb. 5, 2007)
(explaining that a plaintiff pleading fraud in the inducement
must establish the elements of common law deceit).  The
plaintiff's reliance on the misrepresentation must have been
reasonable. Masingill v. EMC Corp., 870 N.E.2d 81, 88 (Mass.
2007).

Where there has been no affirmative misrepresentation, an action for fraud requires both concealment of material information and a duty requiring disclosure. <u>Hopkinton Friendly Serv.</u> v. <u>Global Cos. LLC</u>, 490 F. Supp. 3d 421, 429 (D. Mass. 2020).  It is well-settled in Massachusetts that there is no liability for mere nondisclosure. <u>Smith</u> at 344 (citing <u>Swinton</u> v. <u>Whitinsville Sav. Bank</u>, 42 N.E.2d 808, 809 (1942)). Massachusetts courts have, however, held that a partially truthful or ambiguous statement may be an actionable falsehood when full disclosure is necessary to make the statement not misleading or the nondisclosed fact goes to the essence of the transaction. <u>Id.</u> at 345-46 (collecting cases).

Both parties have moved for summary judgment with respect to Prime Alliance's claim of fraud in the inducement.  Prime Alliance seeks summary judgment only with respect to the first and third elements of its claim, i.e. that Leasing Innovations knowingly made misrepresentations of fact. <u>See</u> Fed. R. Civ. P. 56(a) (providing that a party may move for summary judgment on all or part of a claim).  It contends that Leasing Innovations induced it to enter the Limited Recourse Agreement by representing, in the Certificate and other communications, that the watermelon packaging equipment had been delivered, accepted and inspected prior to the April, 2018, execution of the Limited Recourse Agreement, despite knowing that no such action with

-8-

respect to the equipment had occurred.  Prime Alliance avers
that it never would have entered the Limited Recourse Agreement
had it known that those representations were false and it seeks
rescission of the agreement, i.e. return of the approximately
$940,000 paid for its 75% interest in the lease.

Leasing Innovations denies that it made any such false
representation and asserts that in any event, Prime Alliance
suffered no harm from the alleged fraud.  Defendant contends
that the loss incurred by Prime Alliance was, rather, a result
of the default and subsequent bankruptcy of Quality Fresh Farms,
a risk which Prime Alliance knowingly and voluntarily assumed
and which the delayed delivery of the equipment did not
increase.  Leasing Innovations submits that because Prime
Alliance cannot establish the damages element of its fraud in
the inducement claim, summary judgment should enter in favor of
Leasing Innovations.

As a preliminary matter, Prime Alliance could not
reasonably have relied upon the representation in the
Certificate that the equipment had been inspected because
Heather Fritz ("Fritz"), President of Leasing Innovations,
expressly disclaimed pre-funding inspection in response to an
email from Prime Alliance inquiring whether "an inspection [of
the equipment] has been completed".  Fritz replied that

"[i]nspection is always a POST funding item for us.  It's been ordered."

Prime Alliance maintains that Fritz's email was "materially false and misleading" because it "falsely implied that the [e]quipment had been delivered but not yet inspected".  Even viewed in that light, however, the email made clear to Prime Alliance that inspection had not occurred.  Moreover, plaintiff's own financing documents reflect its understanding that inspection of the equipment had not yet occurred at the time it entered the Limited Recourse Agreement.  Thus, the misrepresentations, if any, at issue are limited to 1) statements in the Certificate concerning delivery and acceptance of the watermelon packaging equipment and 2) statements made by Leasing Innovations and its employees allegedly corroborating the Certificate or implying the truth of its content.

Whether statements of representatives of Leasing Innovations about the delivery and acceptance of the equipment were made fraudulently, rather than negligently or in ignorance, is a question which does not readily lend itself to resolution on summary judgment.  The Court need not address the matter, however, because Prime Alliance has suffered no cognizable damages as a result of any of the allegedly fraudulent statements.  See Commerce Bank & Trust Co. v. Hayeck, 709 N.E.2d 1122, 1126 (Mass. App. Ct. 1999) (explaining that "to establish

fraud in the inducement . . . . [plaintiff] was required to
establish the elements of common law deceit", including
detriment), Equip. & Sys., 798 N.E.2d at 931 (requiring that
damage "directly result[]" from the misrepresentation) (citing
Graphic Arts Finishers, Inc. v. Boston Redev. Auth., 255 N.E.2d
793, 796 (Mass. 1970)).

Plaintiff fails to proffer evidence that the harm it
suffered was caused by the misrepresentations allegedly made by
defendant rather than the known risk that Quality Fresh Farms
might default upon the Lease Agreement. See Smith at 344
(requiring that damage result from alleged misrepresentation).
Prime Alliance asserts that the watermelon packaging equipment
never worked as it was supposed to and quotes a Quality Fresh
Farms executive as having said that

> [t]his was not a good year market wise and adding a
> $1million dollar [sic] machine that didn't reduce our cost
> whatsoever didn't help.

That remark and other, similar evidence, taken in the light
most favorable to Prime Alliance, might tend to show that the
defective watermelon packaging equipment contributed to the
financial decline of Quality Fresh Farms.  It sheds no light,
however, upon the effect, if any, of the delay in the delivery
and acceptance of the equipment (as distinguished from its

defective condition) upon the default and bankruptcy of Quality Fresh Farms.

In sum, Prime Alliance has proffered insufficient evidence for a jury to find that it suffered any damage from the alleged misrepresentations.  While it is possible that expeditious delivery would have foretold the infirmities of the watermelon packaging equipment at an earlier date and thus averted the default and bankruptcy of Quality Fresh Farms, the evidence presented permits only speculation, and more is required to forestall summary judgment. Lang v. Wal-Mart Stores East, L.P., 813 F.3d 447, 460 (1st Cir. 2016) (explaining that a litigant who bears the burden of proof on an issue "cannot defeat summary judgment by relying on speculation about the facts"); Melvin v. H.J. Nassar Motor Co., 246 N.E.2d 679, 680 (Mass. 1969) (reversing decision of trial judge declining to enter directed verdict for defendant in deceit action where there "was too much left to the jury to conjecture" on the question of damages).

Prime Alliance nevertheless maintains that it would not have entered an agreement with a potential customer who made materially false representations, citing deposition testimony to that effect from its executives.  Such an averment is not, however, sufficient to establish the damages element of the claim of fraud in the inducement.  Rather, Prime Alliance's argument improperly "merges the alleged deception with the

injury." Shaulis v. Nordstrom, Inc., 865 F.3d 1, 11 (1st Cir. 2017).  In the absence of damage, i.e. a pecuniary loss, its claim falters. Id. at 15; see Insurative Premium Finance (Jersey) Ltd. v. Deutsche Bank Sec., Inc., No. 12-10642-NMG, 2012 U.S. Dist. LEXIS 187058 at *19 (D. Mass. Dec. 18, 2012).

Finally, plaintiff argues that the focus on damages "misses the point" because it seeks an equitable remedy, i.e. rescission of the Lease Agreement, rather than monetary damages.  That argument is misplaced.  Prime Alliance cannot relieve itself of the obligation to proffer evidence with respect to each element of its cause of action by claiming an equitable remedy. See Iannetta v. Putnam Invs., Inc., No. 00-10385-JLT, 2002 U.S. Dist. LEXIS 3277 at *20 (D. Mass. Feb. 25, 2002) (allowing motion for summary judgment where nonmoving party failed to meet obligation to "produce sufficient evidence to support each and every element of his claim").

## 2. The breach of contract claims

Prime Alliance and Leasing Innovations each allege that the other breached the Limited Recourse Agreement.  A claim of breach of contract under Massachusetts law requires the movant to demonstrate that: 1) there was an agreement between the parties, 2) the agreement was supported by consideration, 3) the movant was ready, willing, and able to perform his or her part of the contract, 4) the defendant (or counter-defendant)

-13-

committed a breach of the contract, and 5) the movant suffered
harm as a result. See Bulwer v. Mount Auburn Hosp., 46 N.E.3d
24, 39 (Mass. 2016).

### a.  Prime Alliance

Prime Alliance claims that Leasing Innovations breached the
Limited Recourse Agreement by failing to pay invoices to Exeter
pertaining to the watermelon packaging equipment.  Section 2 of
the agreement provides that Leasing Innovations

> is responsible for paying all applicable vendor invoice(s)
> under the above-referenced Lease Agreement.

It is undisputed that Exeter is a "vendor" within the
meaning of the Lease Agreement and that Leasing Innovations did
not pay Exeter's July and August, 2018 invoices for the
watermelon packaging equipment.  Prime Alliance alleges that the
nonpayment constitutes a breach of Section 2.  It asserts that
it has been damaged thereby because defendant's nonpayment may
create a lien in favor of Exeter on plaintiff's portion of the
watermelon packaging equipment, jeopardizing its title.

Leasing Innovations counters that it was not authorized to
pay Exeter's invoices without the consent of Quality Fresh Farms
and that such authority was withheld with respect to the two
invoices at issue due to concerns about the quality and
functionality of the watermelon packaging equipment.  It
maintains, however, that the issue of breach is irrelevant

because here, again, Prime Alliance cannot demonstrate that it was damaged by Leasing Innovations' failure to pay Exeter.

To that end, Leasing Innovations proffers testimony from Exeter's President, Michael Batchman ("Batchman"), that the watermelon packaging equipment "really wasn't [Exeter's] to recover" and that, in his opinion, "Prime Alliance could come take it tomorrow".  Leasing Innovations also notes that the time to file a mechanic's lien has long since expired and, rather than contest Prime Alliance's claim, Exeter has in fact helped Prime Alliance secure and sell its collateral.  It asserts that plaintiff's allegations are "little more than imaginary bugbears", without connection to any actual harm suffered, and submits that summary judgment must enter in its favor, citing Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 560 N.E.2d 122, 125 (Mass. App. Ct. 1990) (explaining that courts are "chary of treating the threat of future harm without realization of some tangible harm . . . . as the basis for concluding that damage has occurred").

Prime Alliance urges that the failure of Leasing Innovations to pay the two invoices was a material breach of the Limited Recourse Agreement but does not substantively rebut Leasing Innovations' rebuttal that Prime Alliance has suffered no resultant harm.  Because there is no genuine issue of fact as

-15-

to Prime Alliance's lack of damages, summary judgment will enter in favor of Leasing Innovations.

### b.   Leasing Innovations

Leasing Innovations alleges that Prime Alliance breached the Limited Recourse Agreement by refusing to return $52,500 that it received from Leasing Innovations as part of two payments made pursuant to that agreement in July and August, 2018.

The parties do not dispute that two payments of $50,000 were made to Leasing Innovations by Quality Fresh Farms pursuant to the Lease Agreement in July and August, 2018.  Nor do they dispute that Leasing Innovations remitted 75% of each payment to Prime Alliance pursuant to the Limited Recourse Agreement for a total of $75,000.  Leasing Innovations contends, however, that Prime Alliance was not entitled to $52,500 of that sum because the two payments were subsequently dishonored by Quality Fresh Farms's bank due to insufficient funds, the first in part and the second in its entirety.  Leasing Innovations does not dispute that Prime Alliance was entitled to 75% of the honored portion of the July, 2018 payment, totaling $22,500.

Prime Alliance moves for summary judgment on Leasing Innovations' breach of contract claim.  It maintains that it is entitled to the entire $75,000 and submits that because Leasing Innovations cannot cite any provision of the Limited Recourse or

-16-

Servicing Agreements that have been breached by Prime Alliance, summary judgment should enter in its favor.  In the alternative, it argues that Leasing Innovations breached the Limited Recourse Agreement first by not paying the Exeter invoices, thus excusing Prime Alliance's non-compliance.

Leasing Innovations rejoins that Prime Alliance cannot retain funds beyond its contractual rights and then seek protection by virtue of the contract's silence on the subject of disgorgement.  It cites several cases in which Massachusetts courts have held that a party in receipt of payment beyond the scope of its contractual rights must disgorge it, including Haven Real Estate Group, LLC v. Bell Atl. Mobile of Mass. Corp., Ltd., 236 F. Supp. 3d 454 (D. Mass. 2017) and Post v. Kaitz, No. 99-00212-B, 1999 WL 34781751 (Mass. Super. Ct. Oct. 1, 1999).  Attempts to distinguish those cases by Prime Alliance are unavailing.  Under the Limited Recourse Agreement, it was entitled to 75% of the payments made by Quality Fresh Farms.  To the extent that it retained more than its contractual share, it was in breach of that agreement.  Because of that breach, summary judgment will not be entered in its favor.

There remains, however, a genuine dispute of fact as to whether the withholding by Leasing Innovations of monies owed to Exeter constituted a prior material breach of Section 2 of the Limited Recourse Agreement. See Dalrymple v. Winthrop, 149

-17-

N.E.3d 820, 829 (Mass. App. Ct. 2020) (explaining that "[w]hether a breach is material or immaterial is normally a question for the jury to decide").  If Leasing Innovations breached the Limited Recourse Agreement, Prime Alliance was relieved from its obligations thereunder, including disgorgement of the $52,500. See Hastings Assocs. v. Local 369 Building Fund, 675 N.E.2d 403, 411 (Mass. App. Ct. 1997).  If it did not, Prime Alliance has no claim to the $52,500.

**ORDER**

For the foregoing reasons, the motion of Leasing Innovations, Inc., for summary judgment (Docket No. 77) is **ALLOWED**.  The motion of Prime Alliance Bank, Inc., for summary judgment, in part, (Docket No. 80), is **DENIED**.

Accordingly, the following claims remain pending: 1) Leasing Innovations' counterclaim for breach of contract and 2) its counterclaim for unjust enrichment.

**So ordered.**


           /s/ Nathaniel M. Gorton
           Nathaniel M. Gorton
           United States District Judge

Dated:  May 4, 2022